UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-100 |
| STEVEN REED | SECTION "L" |

**ORDER & REASONS**

Before the Court is Defendant Steven Reed's Motion for Partial Reconsideration, requesting that the Court address his argument that he was denied a fair trial due to the Court's refusal to sever the hospital counts against Walter Reed from the conspiracy counts against both Steven Reed ("S. Reed") and Walter Reed ("W. Reed"). (R. Doc. 356). The Government opposes the Motion. (R. Doc. 363). Steven Reed, upon leave of the court, timely filed a reply. (R. Doc. 369). Having considered the parties' briefs and applicable law, the Court now issues this order and reasons.

**I.    BACKGROUND**

From 1985 to January 12, 2015, W. Reed served as the District Attorney for Louisiana's 22nd Judicial District. S. Reed is his son. On April 23, 2015, the United States Government filed an eighteen-count indictment charging Defendants W. Reed and S. Reed with conspiracy to commit wire fraud and money laundering, as well as substantive counts of wire fraud, money laundering, false statements on income tax returns, and mail fraud. On October 22, 2015, the Government filed a superseding indictment (the "Indictment"), adding an additional wire fraud count (Count 8) against W. Reed.

The gravamen of the conspiracy and wire fraud counts (Counts 1-8) is Defendants' alleged improper personal use of campaign funds. The jury found that W. Reed solicited

1

campaign funds from donors on the premise that the funds would be used to facilitate his reelection, and then used those funds for personal expenses unrelated to his campaign or the holding of public office. Specifically, the wire fraud counts alleged that, inter alia, W. Reed used campaign donations to (i) recruit potential clients for his private legal practice, (ii) pay off various expenses incurred by S. Reed, (iii) pay for private and personal dinners, (iv) purchase flowers for personal reasons, (v) overpay his son for work allegedly performed on behalf of the Campaign, and (vi) host a housewarming party for friends and family unrelated to the Campaign or the holding of public office. Further, W. Reed and S. Reed were charged with engaging in money laundering (Counts 9 and 10) when they caused two service providers for a campaign-related event to make payments to entities controlled by S. Reed in a manner that would disguise the payments as legitimate expenses when, in fact, the payments were for the Defendants' personal benefit. S. Reed was only charged with conspiracy to commit wire fraud, one count of wire fraud (Count 7) and money laundering.

In addition to the wire fraud and money laundering counts, the Indictment also alleged that W. Reed engaged in mail fraud when, in exchange for legal representation by the District Attorney's office, he deposited payments made by the St. Tammany Parish Hospital (the "Hospital") into his own personal bank accounts for private use. According to the Indictment, he arranged for checks to be sent to the District Attorney's office and then deposited them into his personal bank account when he knew these funds were actually intended for the Office of District Attorney. Finally, the Indictment alleges that W. Reed underreported his income on his tax returns for four years (Counts 11-14).

An eleven-day jury trial took place from April 19-May 2, 2016. After trial, the Jury found W. Reed guilty as to counts one-nine and eleven-nineteen, and S. Reed guilty as to counts one,

seven, and nine. (R. Doc. 247). Both W. Reed and S. Reed were found not guilty as to count ten. Id. Both W. Reed and S. Reed filed motions for arrest of judgment, acquittal, and a new trial. The Court denied their motions. (R. Doc. 353). S. Reed then filed a Motion for Reconsideration, arguing the Court did not adequately address his arguments that the Court's failure to sever the hospital counts against W. Reed from the conspiracy counts against W. Reed and S. Reed denied S. Reed a fair trial. (R Doc. 356-1).

## II.     PRESENT MOTION

### A.  S. Reed's Arguments

S. Reed's motion avers that the Court did not consider his post-trial arguments in its Order, but instead focused its analysis on S. Reed's pretrial misjoinder and severance motions. (R. Doc. 356-1). S. Reed believes that the Court's analysis is insufficient, because his post-trial motion addressed what happened at trial while the Court only re-addressed arguments the parties made pretrial.

S. Reed cites to *United States v McRae*, arguing that even if the need for severance was not clear before trial, it may yet be made clear after all the evidence has been presented. 702 F.3d 806, 828 (5th Cir. 2012). S. Reed further argues that because his defense relied on the testimony of W. Reed, he was denied a fair trial when W. Reed's credibility was impeached at trial due to testimony regarding the hospital counts, which inarguably did not involve S. Reed. (R. Doc. 356-1 at 1-2). The Government's case against W. Reed for the hospital counts, he argues, "necessarily undermined his defense because it discredited the witness on whom he relied to present his defense," namely, W. Reed. (R. Doc. 356-1 at 2). But for the government's impeachment of W. Reed, S. Reed avers he would have been exonerated. (R. Doc. 356-1 at 2).

3

Though the Court instructed the jury that each defendant's guilt should be considered separately and individually, S. Reed avers that the instruction was insufficient to cure the problem. Though he was in no way involved in the hospital counts, the Government's successful efforts to discredit W. Reed on those counts arguably tainted W. Reed's testimony in support of S. Reed for the conspiracy counts. (R. Doc. 356-1 at 2-3). S. Reed argues that the Court did not properly address the impeachment that occurred at trial, and requests a reconsideration of the Court's ruling on his severance arguments.

### B. Government's Arguments

The Government opposes S. Reed's motion, contending that S. Reed's arguments are a distinction without a difference and that he seeks relief from a failed trial strategy. (R. Doc. 363 at 1). Specifically, S. Reed's choice to link his defense to his father's testimony was a strategic choice that ultimately failed to convince the jury of his innocence. *Id*. at 2.

The Government also argues that though S. Reed disagrees with the Court's analysis, he fails to detail a different, more-appropriate analysis that the Court should have performed. *Id*. at 1. Though S. Reed seems to argue that his post-trial severance arguments are separately significant from his pre-trial severance arguments, he does not cite to any law suggesting the standards are different at different stages of the trial. *Id*. at 2. Similarly, though S. Reed argues the limiting jury instructions were insufficient, the Government avers S. Reed does not adequately explain how the instructions were insufficient but instead relies wholly on conclusory statements. *Id*. at 3.

The Government contends that S. Reed's reliance on *McRae* to suggest that the in-trial evidence and testimony added merit to his severance arguments is improper. *United States v. McRae*, 702 F.3d 806 (2012). The Government argues *McRae* is distinguishable from the instant

case – this case does not contain any of the factors discussed in *McRae*: (1) "a marginal relationship between the charge and the evidence against" S. Reed and those against W. Reed; (2) "the significant difference between the simpleness of the underlying charges against" S. Reed and the more egregious charges against W. Reed; or (3) "the highly inflammatory and prejudicial nature of the charges and evidence against" W. Reed that had no connection to S. Reed. *Id*. at 828. Instead, the Government argues, S. Reed's and W. Reed's crimes were related and overlapped considerably. (R. Docs. 93 at 13, 353 at 71). Further, though W. Reed faced additional charges related to the hospital, those charges did not prejudice S. Reed nor were they significantly more complex than the corruption and campaign finance charges. (R. Doc. 363 at 4). All of the charges were based on fraud and all had to do with W. Reed's position as a district attorney.

      The Government separately highlights that S. Reed did not make any severance arguments in his oral argument supporting his motions for acquittal, arrest of judgment, and new trial on October 5, 2016. (R. Doc. 363 at 2).

      In all, the Government argues that S. Reed's attempt to distinguish between his pre-trial and post-trial arguments fails. *Id*. at 5. Any prejudice S. Reed suffered, the Government avers, was due to his own trial strategy.

**III.   Law & Analysis**

      A district court has continuing jurisdiction over its criminal cases and may reconsider its prior decisions. *See United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975).  Courts should apply the standards set forth by the Federal Rules of Civil Procedure for motions to reconsider in criminal cases. *See United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *United States v. Healy*, 376 U.S. 75, 78-79 (1964)).  A Rule 59 motion to reconsider "calls into question

the correctness of a judgment," *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002), and may not be used to rehash evidence or legal theories that could have initially been presented prior to the judgment. *See Templet v. HydroChem Inc.*, 376 F.3d 473, 479 (5th Cir. 2004). Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989) (internal quotations omitted). Reconsideration of a judgment is an extraordinary remedy to be used sparingly. *Templet*, 376 F.3d at 479.

      S. Reed does not meet the standard for the "extraordinary" remedy of reconsideration. While it may be true that the Court focused its analysis on the arguments made pre-trial, the Court's analysis and consideration of the issues has remained the same throughout. Substantially similar arguments that the hospital and conspiracy counts should have been severed were also made by W. Reed and were addressed in the Court's Order. As was previously held, there is no requirement that each defendant have participated in the same act(s), or that each defendant be charged in the same count(s). Fed. R. Crim. P 8(b); *McRae*, 702 F.3d at 820. The dispositive inquiry is whether the indictment charges "a series of acts unified by some substantial identity of facts or participants." *See McRae*, 702 F.3d at 821 (quoting *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. 1981)); *see also United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985) ("Whether the counts of an indictment fulfill the 'same series' requirement is determined by examining the relatedness of the facts underlying each offense.")). This Court found before trial and continues to hold that the events and witnesses were unifying across the counts and, in the interest of judicial economy, the trial was not severed.

      The Fifth Circuit has explained that "[a] defendant is not entitled to severance just because it would increase his chance of acquittal or because evidence is introduced that is

admissible against certain defendants." *Burton v. U.S.,* 237 F.3d 490, 495 (5th Cir.2000) (citing *Zafiro,* 506 U.S. at 540). Furthermore, "even where defendants have markedly different degrees of culpability, severance is not always required if less drastic measures, such as limiting instructions will suffice to cure the prejudice." *Id.* (citing *United States v. Broussard,* 80 F.3d 1025, 1037 (5th Cir.1996)); *see also U.S. v. Bermea,* 30 F.3d 1539, 1572 (5th Cir.1994) ("Any prejudice created by a joint trial can generally be cured through careful jury instructions."). The Fifth Circuit has explained that "[i]f the jury can keep separate the evidence that is relevant to each defendant, even if the task is difficult, and render a fair and impartial verdict as to each defendant, a severance should not be granted." *U.S. v. Ramirez,* 145 F.3d 345, 355 (5th Cir.1998) (citing *United States v. Walters,* 87 F.3d 663, 670–71 (5th Cir.1996)).

As S. Reed admits, the jury was instructed at trial to consider the defendants separately. Further, while the Government's impeachment of W. Reed may have influenced the jury's opinion of the truth of his testimony, this Court is not in a position to make that finding. Finally, while the Court's analysis of the propriety of refusing severance stands on its own, it is worth nothing that S. Reed's decision to rely on the testimony of his father in making his own defense was a tactical choice made during the trial. It is not for the Court to now overturn the verdict because of that choice.

IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that S. Reed's motion for reconsideration is **DENIED**.

New Orleans, Louisiana, this 9th day of January, 2017.

_____
UNITED STATES DISTRICT JUDGE